1   CALVIN E. DAVIS (SBN: 101640)
    cdavis@grsm.com
2   AARON P. RUDIN (SBN: 223004)
    arudin@grsm.com
3   GORDON REES SCULLY MANSUKHANI, LLP
    633 West Fifth Street, 52nd Floor
4   Los Angeles, CA 90071
    Phone: (213) 576-5000
5   Facsimile: (213) 680-4470

6   Attorneys for Plaintiff CYCLEBAR FRANCHISING,
    LLC and CYCLEBAR FRANCHISING SPV LLC

7

8                  **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

10

11  CYCLEBAR FRANCHISING, LLC,          Case No.: 2:25-cv-2833
    an Ohio limited liability company;
12  CYCLEBAR FRANCHISING SPV,
    LLC, a Delaware limited liability    **COMPLAINT BY PLAINTIFFS**
13  company,                             **CYCLEBAR FRANCHISING,**
                                         **LLC AND CYCLEBAR**
14                      Plaintiffs,      **FRANCHISING SPV, LLC FOR:**

15           vs.                         **1) BREACH OF CONTRACT;**
                                         **2) BREACH OF THE IMPLIED**
16  CBRJ, LLC, a Kansas limited liability **COVENANT OF GOOD FAITH**
    company; RODNEY L. STEVEN II, an    **AND FAIR DEALING;**
17  individual; JOHN G. JANSZEN, an     **3) TRADE SECRET**
    individual; and DOES 1-10,          **MISAPPROPRIATION;**
18                                       **4) UNFAIR COMPETITION;**
                        Defendants.      **5) INTENTIONAL**
19                                       **INTERFERENCE WITH**
                                         **CONTRACTUAL RELATIONS;**
20                                       **6) INTENTIONAL**
                                         **INTERFERENCE WITH**
21                                       **PROSPECTIVE ECONOMIC**
                                         **ADVANTAGE;**
22                                       **7) NEGLIGENT**
                                         **INTERFERENCE WITH**
23                                       **PROSPECTIVE ECONOMIC**
                                         **ADVANTAGE;**
24                                       **8) FEDERAL TRADEMARK**
                                         **INFRINGEMENT;**
25                                       **9) COMMON LAW**
                                         **TRADEMARK**
26                                       **INFRINGEMENT; AND**
                                         **10) FEDERAL UNFAIR**
27                                       **COMPETITION, LANHAM**
                                         **ACT, 15 U.S.C. § 1125**
28

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-1-
COMPLAINT

Plaintiffs CYCLEBAR FRANCHISING, LLC., an Ohio limited liability company, (hereinafter referred to as "CB") and CYCLEBAR FRANCHISING SPV, LLC, a Delaware limited liability company (hereinafter referred to as "CBSPV") (CB and CBSPV are collectively hereinafter referred to as "Plaintiffs") for their causes of action against Defendants CBRJ, LLC, a Kansas limited liability company (hereinafter referred to as "CBRJ"), RODNEY L. STEVEN II, an individual (hereinafter referred to as "Steven") JOHN G. JANSZEN (hereinafter referred to as "Janszen") (CBRJ, Steven and Janszen are collectively hereinafter referred to as "Defendants") and DOES 1-10, allege as follows:

## I.  INTRODUCTION

1.     Founded in 2004, CB is a franchisor of personal fitness indoor cycling studios, utilizing a distinctive business format, specifications, and operative procedures (collectively the "System") under the service mark CYCLEBAR® (the "CYCLEBAR® Studios").

2.     CYCLEBAR® Studios offer a variety of low-impact, high-intensity indoor cycling workouts that include an immersive, multi-sensory, community-focused experience in state-of-the-art "CycleTheaters," led by specially trained instructors, enhanced with "CycleBeats" playlists and tracked using rider-specific "CycleStat" performance metrics.

3.     To take advantage of its distinctive System and its well-known trademarks, Defendants entered into various Franchise Agreements with CB. Under the terms of the agreements, Defendants would operate the CYCLEBAR® Studios for ten years.

4.     The result was a resounding success for Defendants. They became CB franchisees and operated multiple highly profitable CYCLEBAR® Studios for years.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

5.      But CB only allowed Defendants to become franchisees and benefit from its brand-identity only because Defendants agreed to adhere to the terms of the Franchise Agreements.

6.      Further, because they agreed to the covenants in the Franchise Agreements—including the non-compete provisions therein—CB also allowed Defendants access and use of CB's confidential and proprietary information, including information relating to CB's System, the business, their vendor relationships, classes, management, as well as operation and promotion of their CYCLEBAR® Studios.

7.      Yet after prospering and building a customer base for years by relying on CB's business model and reaping the benefits of its well-recognized brand name, proprietary and confidential information and trade secrets, Defendants suddenly—and without notice—abandoned the contracts and rebranded at least five (5) CYCLEBAR® Studios as "Ride Tribe" Studios.  On information and belief, the rebranded "Ride Tribe" Studios are virtually identical to the CYCLEBAR® Studios, save for the name.

8.      Defendants therefore breached the Franchise Agreements by utilizing CB's confidential and proprietary information in connection with their current "Ride Tribe" Studios.  Defendants were fully aware that their years-long success was dependent on their use of CB's System, including CB's confidential, proprietary and trade secret information, which Defendants received from CB only pursuant to the terms of the Franchise Agreements.  As a result, Defendants stole the confidential, proprietary and trade secret information they obtained from CB (including customer information and intellectual property) and utilized the same to unlawfully compete with CB.

9.      Defendants further violated the non-compete provisions of the Franchise Agreements by using CB's business itself to compete directly with CB, which resulted in loss of consumers and damaged CB's brand identity.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

10.     In sum, lacking the knowledge and ability to open and operate a personal fitness indoor cycling studio on their own, Defendants became franchisees of CB to learn its System, formula and process for doing so successfully.  After being provided with CB's System and confidential information, Defendants stole them to unfairly compete with CB in blatant violation of the Franchise Agreements.

11.     Defendants' conduct is egregious and the exact opposite of fair competition.  As a result of Defendants' misconduct, Plaintiffs are seeking, among other things, compensatory damages, treble damages, disgorgement of Defendants' profits and recovery of their attorney's fees.

## II.    JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants agreed to, and are subject to, personal jurisdiction in this District pursuant to a forum selection clause and therefore reside in this District as that term is defined in 28 U.S.C. § 1391(c)(2).  Venue is also proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this District.

## III.    THE PARTIES

14.     CB is a limited liability company organized under the laws of Ohio, and its principal place of business is Irvine, California.  CycleBar Holdco, LLC, a Delaware limited liability company, is the sole member and parent of CB. Xponential Fitness, LLC, a Delaware limited liability company, is the sole member and parent of CycleBar Holdco, LLC.  Xponential Intermediate Holdings, LLC, a Delaware limited liability company is the sole member and parent of Xponential Fitness, LLC.  Xponential Fitness, Inc., a Delaware corporation with its principal

place of business in California is the parent of Xponential Intermediate Holdings, LLC.

15.     CBSPV, is a limited liability company organized under the laws of Delaware, and its principal place of business is in Irvine, California.  XPOF Assetco, LLC, a Delaware limited liability company, is sole member and parent of CBSPV.  Xponential Fitness, LLC is the sole member and parent of XPOF Assetco, LLC.

16.     CBRJ is a limited liability company organized under the laws of the State of Kansas, with its principal place of business in Wichita, Kansas.

17.     On information and belief, defendants Steven and Janszen are the only members of CBRJ and are residents and citizens of the State of Kansas.

18.     The true names and capacities, whether individual, corporate, associate, affiliate or otherwise of DOES 1-10, inclusive, are unknown to CB. Therefore, CB sues DOES 1-10 by such fictitious names.

19.     At all relevant times, each of the Defendants and DOES 1-10, acted as an agent, servant, employee, co-conspirator, consultant, principal, employer, alter-ego and/or joint venturer of the other Defendants and DOES 1-10, and in doing the things alleged herein acted within the course and scope of such agency, employment, alter-ego and/or in furtherance of the joint venture.  Each of the Defendants' and DOES 1-10's acts alleged herein was done with the permission and consent of each of the other Defendants and DOES 1-10.

20.     Defendants and DOES 1-10 are individually sued as principals, participants, aiders and abettors, and co-conspirators in the wrongful conduct complained of and the liability of each arises from the fact that each has engaged in all or part of the improper acts, plans, schemes, conspiracies, or transactions complained of herein.

## IV.     **THE FRANCHISE AGREEMENTS**

### A.     **THE HYDE PARK FRANCHISE AGREEMENT**

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

21. CB entered into a Franchise Agreement with CycleBar Hyde Park, LLC ("Franchisee"), effective December 29, 2017, granting Franchisee the right to operate one CYCLEBAR® Studio located at 2713 Edmundson Rd., Cincinnati, OH 45209 (the "Hyde Park FA") for an initial term of ten years from the date the studio opened for business (the "Opening Date"). A true and correct copy of the Hyde Park FA is attached hereto as **Exhibit 1**.

22. In exchange, pursuant to Section 3 of the Hyde Park FA, Franchisee agreed, among other things, to pay franchise fees, including, but not limited to, a weekly Royalty Fee of 7% and a Marketing Fee of 2% of Franchisee's gross revenue, a Marketing Fee of 2% of Franchisee's gross revenue and a Technology Fee of $900 a month. Any late payment from Franchisee accrued daily interest at the rate of 18% per annum and a late fee of $100 for each week a payment remains unpaid after due.

23. Section 9 of the Hyde Park FA required Franchisee to obtain, maintain and use hardware, software, other equipment and network connections necessary to operate the CycleStat® technology platform, the CycleBeats® music system, the point of sale system, the customer relationship management system, and the online reservation system (collectively, the "Studio Management and Technology System") and agreed that the Studio Management and Technology System would be dedicated for business uses related to operation of the CYCLEBAR® Studio.

24. Pursuant to Section 9 of the Hyde Park FA, Franchisee acknowledged that CB is the owner of the CYCLEBAR® mark, and certain other trademarks, service marks, trade names, signs, associated deigns, and logos (the "Marks"); the distinguishing characteristics of the CB System, including but not limited to, CB's studio designs (including CB's tiered custom cycling theater known as Cycle Theatre), layouts and identification schemes (the "Trade Dress"); the present and future copyrights relating to the CB System or CycleBar concept, including, but not limited to marketing materials ("Copyrights"), and any trade secrets, methods

or procedures that are part of the CB System (collectively the "Intellectual Property").

25.   Franchisee further agreed pursuant to Section 9 of the Hyde Park FA that upon expiration or termination of the Hyde Park FA, all its rights to use the Intellectual Property would automatically revert to CB.

26.   Pursuant to Section 10 of the Hyde Park FA, Franchisee agreed that before and during the term of the Hyde Park FA, CB may disclose in confidence to Franchisee, among other things, certain trade secrets, know-how and other confidential information relating to the System, CB's business, CB classes, and the management, operation or promotion of the CYCLEBAR® Studio (the "Proprietary Information"), including, but not limited to, (ii) methods, formats, systems, System Standards, sales and marketing techniques, knowledge and experience used in developing and operating CYCLEBAR® Studios; (iii) marketing research and promotional, marketing, advertising, public relations, customer relationship management and other brand-related materials and programs for CYCLEBAR® Studios; (iv) knowledge of specifications for and suppliers of, and methods of ordering, certain items that CYCLEBAR® Studios use or sell; (v) knowledge of the operating results of and financial performance of other CYCLEBAR® Studios; (vi) customer communication and retention programs, along with date used or generated in connection with those programs; and (vii) any other information CB reasonably designates from time to time as confidential or proprietary, subject to certain specific exceptions.

27.   Also pursuant to Section 10 of the Hyde Park FA, Franchisee agreed that CB and its affiliates own all right, title and interest in and to the Proprietary Information and Franchisee will not use, or permit any person to use or disclose any Proprietary Information to any other person, except to the extent necessary for its professional advisors and employees to perform their functions in the operation of the CYCLEBAR® Studio.  Franchisee specifically agreed and that its "use of

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

the Proprietary Information in any other business would constitute an unfair method of competition with us and our franchisees."

28.     In addition, under Section 10 of the Hyde Park FA, Franchisee agreed that all Customer Information that it collected from customers and potential customers in connection with the CYCLEBAR® Studio is owned by CB and must be furnished to CB at any time that it requests it.  Franchisee only had the right to use the Customer Information while the Hyde Park FA or a successor franchise agreement was in effect, but only to market CycleBar products and services to customers in accordance with the policies that CB establishes and applicable law. The Franchisee agreed that it "may not sell, transfer, or use Customer Information for any purpose other than marketing CycleBar products and services".

29.     Moreover, pursuant to Section 12 of the Hyde Park FA, Franchisee agreed that during the term of the Hyde Park FA, and for two years after expiration or termination of the Hyde Park FA, Franchisee and its owners would not, without CB prior written consent, (i) directly or indirectly own, manage, engage in, be employed in a managerial position by, advise, make loans to, or have any other interest in any Competitive Business that is (or is intended to be) located with a ten-mile radius of the former CYCLEBAR® Studio or any other CYCLEBAR® Studio that is operating or under development at the time of such expiration or termination or (ii) solicit for employment any person who at any time within the immediate past 12 months has been employed by CB, or our affiliates, or by any of CB's franchisees.

30.     Under Section 12 of the agreement, the Franchisee's owners "personally bind themselves to this Section 12 by signing this Agreement or the attached Guarantee."  Further, Franchisee acknowledged and agreed that (i) the time, territory and scope of the covenants provided in Section 12 are reasonable and necessary for the protection of CB's legitimate business interest; (ii) Franchisee received sufficient and valid consideration in exchange of the

covenants; (iii) enforcement of the same would not impose undue hardship; and (iv) the period of protection will not be reduced by any period of time during which you are in violation of the provisions of those covenants or any time required for enforcement of those covenants.

31.     In recognition of the damages that a breach of Section 12 of the Hyde Park FA will cause to CB, its reputation, and its goodwill, Franchisee agreed that CB would suffer irreparable injury for a breach for which no adequate remedy at law is available.  Franchisee therefore agreed that any conduct violating the terms of Section 12 merits injunctive relief.

32.     Section 14 of the Hyde Park FA sets forth certain "Events of Default" including, but not limited to, (1) Franchisee voluntarily suspending operation of the CYCLEBAR® Studio without CB's prior written consent for five or more consecutive days; (2) Franchisee's unauthorized use of the Marks or any other identifying characteristic of CB; (3) Franchisee's, or its owners, disclosure of the contents of CB's Proprietary Information; (4) Franchisee's, or its owners, violation of the non-competition provisions; (5) Franchisee's default under any other franchise agreement or other agreements with CB or its affiliates; and (6) Franchisee defaulting three or more times within any 18-month period.

33.     If an Event of Default occurs, Section 14 of the Hyde Park FA gives CB the right to terminate and exercise other specified remedies, including assuming management of, or appointing a third party to manage, the CYCLEBAR® Studio and charge a management fee equal to 3% of the CYCLEBAR® Studio's gross revenue.

34.     Upon termination, and pursuant to Section 15 of the Hyde Park FA, Franchisee agreed to, among other things, pay all sums owing to CB and its affiliates, discontinue use of the System and Intellectual Property, return all Customers Information and Proprietary Information and not use the same, and agree that the failure to abide by the provisions of Section 15 will result in

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

**Gordon Rees Scully Mansukhani, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

irreparable harm to CB, that any remedy at law for damages will be inadequate and that CB will be entitled to injunctive relief, in addition to any other remedies it may have.

35.     Section 15 of the Hyde Park FA also provides that Franchisee will reimburse CB for all expenses it reasonably incurs (including attorney's fees) to, among other things, enforce the terms of the Hyde Park FA or any other obligation owed to CB by Franchisee and/or the Owners.

36.     Pursuant to Section 17, the Hyde Park FA is binding upon and will inure to the benefit of Franchisee and its heirs, executors, legal representatives, successor and permitted assigns.

37.     Furthermore, pursuant to Section 1.5 of the Hyde Park FA, Franchisee agreed that if it was an entity, each of its owners must execute the Payment and Performance Guarantee attached as Appendix C to the and be bound by the provisions of the Hyde Park FA.

38.     Pursuant to a Transfer and Assignment Agreement effective March 8, 2019, Franchisee assigned all its assets, and all its rights under the Hyde Park FA, with respect to the ownership and operation of the CYCLEBAR® Studio located at 2713 Edmondson Road, Cincinnati, OH 45209 to JCM Kentucky Cycle, LLC ("JCMKY"), and CB provided its consent to the assignment.  A true and correct copy of the March 8, 2019, Transfer and Assignment Agreement is attached hereto as **Exhibit 2**.

39.     Pursuant to a Multi-Party Agreement for the Transfer of CycleBar Assets and Operation effective July 1, 2019 (the "MPA"), JCMKY transferred all its operations assets, rights and responsibilities, including under the Hyde Park FA, with respect to the ownership and operation of the CYCLEBAR® Studio located at 2713 Edmondson Road, Cincinnati, OH 45209 to CBRJ, and its owners Steven and Janszen. CB consented to the transfer and assignment.  A true and correct copy of the MPA is attached hereto as **Exhibit 3**.

**B.    THE FRITZ FARM FRANCHISE AGREEMENT**

40.    CB entered into a Franchise Agreement with JCMKY, effective April 6, 2016, granting JCMKY the right to operate one CYCLEBAR® Studio located at 4049 Finn Way, Lexington, KY 40517 (the "Fritz Park FA") for an initial term of ten years from the date the studio opened for business (the "Opening Date").  A true and correct copy of the Fritz Park FA is attached hereto as **Exhibit 4**.

41.    The terms of the Fritz Park FA are similar to those set forth above with respect to the Hyde Park FA.

42.    Pursuant to the MPA, JCMKY transferred all its operations assets, rights and responsibilities, including under the Fritz Park FA, with respect to the ownership and operation of the CYCLEBAR® Studio located at 4049 Finn Way, Lexington, KY 40517 to CBRJ, and its owners Steven and Janszen. CB consented to the transfer and assignment.

**C.    THE POLARIS FRANCHISE AGREEMENT**

43.    CB entered into a Franchise Agreement with Danielle R. King and A. Douglas King, effective February 29, 2016, granting the Kings the right to operate one CYCLEBAR® Studio located at 661 Worthington Road, Westerville, OH 43082 (the "Polaris FA") for an initial term of ten years from the date the studio opened for business (the "Opening Date").  A true and correct copy of the Polaris FA is attached hereto as **Exhibit 5**.  The Kings subsequently transferred their rights under the Polaris FA to DD Cycle, Inc. ("DDC").

44.    The terms of the Polaris FA are similar to those set forth above with respect to the Hyde Park FA and Fritz Park FA.

45.    On or about, July 5, 2019, JCMKY reached an agreement in principle to purchase the CYCLEBAR® Studio located at 661 Worthington Road, Westerville, OH 43082 from DDC for $25,000, and assume all liabilities under the Polaris FA.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

46.    Pursuant to the MPA, CB paid the $25,000 purchase price, and all rights under the Polaris FA were assigned to CBRJ and its owners Steven and Janszen, and CB provided its consent to the transfer and assignment.

**D.    THE BEARDEN FRANCHISE AGREEMENT**

47.    CB entered into another Franchise Agreement with JCMKY, effective July 1, 2019, granting JCMKY the right to operate one CYCLEBAR® Studio located at 5430 Homberg Drive, Knoxville, TN 37919 (the "Bearden FA") for an initial term of ten years from July 1, 2019.  A true and correct copy of the Bearden FA is attached hereto as **Exhibit 6**.

48.    Pursuant to Article 5 of the Bearden FA, Franchisee agreed, among other things, to pay franchise fees, including, but not limited to, a weekly Royalty Fee of 7% of Franchisee's gross revenue, a Fund Contribution of 2% of Franchisee's gross revenue and a Technology Fee. Any late payment from Franchisee accrued daily interest at the rate of 1.5% per month or the highest rates allowed by law.

49.    Pursuant to Article 10 of the Bearden FA, JCMKY was required to acquire a computer for use in the operation of the CYCLEBAR® Studio, and agreed to record all its receipts, expense, invoices, member lists, class and employee schedules and other business information promptly in the computer system and use the software specified by CB.  Data, including names, addresses, contact information and financial information of members of the CYCLEBAR® Studio were required to be captured by JCMKY on the software required by CB, and became the joint property of CB and JCMKY during the term of the Bearden FA.  Upon termination or expiration of the Bearden FA, CB became the sole owner of the information.

50.    Pursuant to Article 12 of the Bearden FA, JCMKY acknowledged and agreed that all information relating to CB's System, to the development and operation of the CYCLEBAR® Studio, CB's training program, member, supplier

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

list, or other information or know-how distinctive to a CycleBar Franchise ("Confidential Information") are proprietary and trade secrets of CB. JCMKY agreed to hold Confidential Information in strict confidence during and after the term of the Bearden FA, and not to divulge to anyone directly or indirect at any time, other than employees, or independent contracts, with a need to know the information to operate the CYCLEBAR® Studio.

51.    Article 12 of the Bearden FA further provides that JCMKY agrees that its failure to comply with Article 12 shall cause CB irreparably injury for which no adequate remedy at law is available and CB shall be entitled to seek injunctive relief.

52.    In addition, Article 13 provides that during the term of the Bearden FA and for a period of two (2) years after expiration or termination of the Bearden FA, JCMKY and its principals, owners and certain others may not directly or indirectly own, maintain, engage in, or have any interest in or involvement with any Competing Business. The geographic scope of this provision is limited post-termination to a Competing Business at the authorized location or within a ten-mile radius of the Authorized location or any other Franchise Studio or Corporate Studio that is open, under lease or under development at the time of expiration of termination of the Bearden FA.

53.    Article 13 further provides that for a period of two (2) years after expiration or termination of the Bearden FA, JCMKY and its principals, owners and certain others may solicit business from customers of JCMKY's former studio, contact any of CB's suppliers or vendors for any competitive purpose or solicit any of CB's other employees or employees of its affiliates or any other franchisee.

54.    Moreover, Article 13 of the Bearden FA provides that JCMKY agrees that its violation of Article 13 will cause irreparably injury to CB and CB will have no adequate remedy at law and be entitled to injunctive relief and damages, as well as, an accounting of all earnings, profits, and other benefits arising from its

violation, and that if CB seeks relief as a result of any violation of Article 13, the restrictions contained in Article 13 will remain in effect until two years after such relief is granted.

55.     Article 15 provides that CB shall have the right to terminate the Bearden FA for "good cause" upon delivering notice of termination to JCMKY, which shall include a material breach of the Bearden FA or any other agreement with CB or its affiliates, the intentional, repeated or continuous breach of any provision of the Bearden FA or any other agreement with CB or its affiliates, and certain specified breached.

56.     Article 15 also provides that CB shall have the right to immediately terminate the Bearden FA if, among other things, JCMKY voluntarily or otherwise abandons the CYCLEBAR® Studio by failing to actively operate for more than two days without prior written consent of CB. In addition, JCMKY's default under the terms and conditions of other agreements with CB and/or its affiliates, shall, at the option of CB, constitute a default under all such agreements.

57.     Upon termination, and pursuant to Article 15 of the Bearden FA, Franchisee agreed that, among other things, all rights, privileges and licenses granted to JCMKY shall immediately cease and be null and void and of no further force and effect and immediately revert to CB; the JCMKY would immediately cease using in any manner, CB's Marks, System or other copyright information or materials or confidential information obtained; to pay all sums owing to CB.

58.     In addition, JCMKY agreed to pay CB liquidated damages in an amount equal to the sum of the royalties paid to CB for the twenty four (24) months prior to termination of the Bearden FA.

59.     The Bearden FA contains an attorney's fees provision in Article 16 that provides if legal action or arbitration is necessary to enforce the terms and conditions of the Bearden FA, the prevailing party shall be entitled to recover, among other things, reasonable attorney's fees from the non-prevailing party.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angles, CA 90071

60. Furthermore, pursuant to Article 2.2 of the Bearden FA, JCMKY agreed that if it was an entity, all owners with more than a 10% interest must execute CB's then current Guaranty.

61. Pursuant to the MPA, JCMKY transferred all its operations, assets, rights and responsibilities, including under the Bearden FA, with respect to the ownership and operation of the CYCLEBAR® Studio located at 5430 Homberg Drive, Knoxville, TN 37919 to CBRJ, and its owners Steven and Janszen, and CB provided its consent to the transfer and assignment.

**E.    THE CYCLEBAR® MARKS**

62. CB utilizes and relies on a family of trade and/or service marks which are registered on the Principal Register of the United States Patent and Trademark Office and which provide brand identity for the CB ® System, including, but not limited to, United States Registered Trademark No. 4738832 (standard character mark - CYCLEBAR® - for health club services, namely, providing instruction, equipment and facilities for use in the field of physical exercise registered May 19, 2015); No. 5733930 (standard character mark – CYCLEBAR® - for physical fitness studio services, namely, providing group exercise instruction, equipment, and facilities; Physical fitness training of individuals and groups registered April 23, 2019); No. 5111052 (standard character mark - #CYCLEBAR® - for health club services, namely, providing instruction, equipment and facilities for use in the field of physical exercise registered December 27, 2016) and depicted as follows:

63. CBSPV is the owner of the federally registered CYCLEBAR® Marks pursuant to an assignment from CB.

64. CB and CBSPV have used, and continue to use, the CYCLEBAR® Marks to identify their goods, services, and the CB System and brand. CB and CBSPV invested much time, effort and a substantial amount of money in advertising and promoting the goods and services offered under the CYCLEBAR® Marks and such that the CYCLEBAR ® Marks have become famous.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angles, CA 90071

65.     CB and CBSPV's goods and services have been, and continue to be, extensively advertised and used throughout the United States.  By virtue of advertising and sales, together with consumer acceptance and recognition, the CYCLEBAR® Marks identify the goods and services of CB and CBSPV and its authorized licensees only and distinguishes them from goods and services offered by others.  The CYCLEBAR® Marks thus have become, and continue to be, a valuable asset symbolizing CB and CBSPV, their quality and superior services, and goodwill.

**F.     DEFENDANTS' ABANDONMENT, BREACH AND UNLAWFUL COMPETITION**

66.     Following July 2019, Defendants began operating the CYCLEBAR® Studios set forth above pursuant to the terms of their respective FAs.

67.     On information and belief, these CYCLEBAR® Studios were highly profitable and attracted significant numbers of consumers.

68.     However, in or around March of 2025, Defendants abruptly closed and abandoned all the above CYCLEBAR® Studios, without telling CB that it had done so, and rebranded them as "Ride Tribe" Studios.  Defendants immediately began operating these Ride Tribe Studios in direct competition with CB.

69.     To make matters worse, Defendants have utilized, and are continuing to utilize, CB's Confidential Information, Proprietary Information, Intellectual Property and trade secrets in connection with their unlawful operation of the "Ride Tribe" Studios, including, but not limited to: 1) information for customers of CYCLEBAR® Studios that belongs to CB; 2) CB's proprietary software (including CycleStat®); 3) ClubReady (the same studio management software utilized by CB) to, among other things, communicate directly with customers of CYCLEBAR® Studios; 4) offering the same classes offered by CYCLEBAR® Studios; and 5) using social media owned by CB (including Instagram Accounts),

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  and the CYCLEBAR® Marks owned by CBSPV in their social media, to advertise

2  and promote their Ride Tribe Studios in direct competition with CB.

3      70.    For example, Defendants have improperly utilized CB's Confidential

4  Information, Proprietary Information, Intellectual Property and trade secrets by,

5  among other things, using ClubReady to send solicitations, such as the following,

6  to customers of CYCLEBAR® Studios:

---

Can't view this email properly? view in browser

I

Hello!

ICYMI- Cyclebar Fritz Farm is now **RIDE TRIBE Fritz Farm.  To Celebrate and to re-introduce ourselves, we are offering your first month for only $3**! 😱 We have membership options for all budgets, schedules and goals! You'll have access to both Lexington studios, over 10 class times to choose from per day, and a workout that is catered to everyBody!

You'll even get two weeks to try us out to see if we are a good fit for you! If you don't love us after 2 weeks, there is no obligation! Let us show you why we are the best fitness community you'll find. YOU BELONG HERE!

Hereâ€™s why youâ€™ll love being part of the Tribe:

- **Fresh new studio** ready for you to crush your goals
- **High-energy classes** that make fitness fun and exciting
- **Powerful strength classes** to build muscle and improve performance
- **A welcoming community** that is inclusive and supportive.

🚨 **This offer wonâ€™t last long** â€" join us today and be part of our exciting new journey!

***Email our studio manager at chelsie.patrick@letsridetribe.com to get ahold of our rebranding sale!***

---

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

COMPLAINT

RIDETRIBE - Fritz Farm [4049 Finn Way Lexington, KY 40517](4049 Finn Way Lexington, KY 40517)
859.594.7073 [letsridetribe.com/locations/fritz-farm/](letsridetribe.com/locations/fritz-farm/)

RIDETRIBE - Fritz Farm
[4049 Finn Way](4049 Finn Way)
[Lexington, KY 40517](Lexington, KY 40517)
859.594.7073
[letsridetribe.com/locations/fritz-farm/](letsridetribe.com/locations/fritz-farm/)

[unsubscribe](unsubscribe)

## FIRST CAUSE OF ACTION

### (CB's Claim for Breach of Franchise
### Agreements against All Defendants)

71.     CB hereby realleges and incorporates all prior allegations as if set forth fully herein.

72.     CB has performed all covenants required to be performed by it under the Hyde Park FA, the Fritz Farm FA, the Polaris FA and the Bearden FA (collectively the "FAs").

73.     Defendants have breached and continue to be in breach of the FAs by, inter alia, abandoning their CycleBar® Studios, rebranding them as "Ride Tribe" in order to directly compete with CB in violation of the non-competition provisions of the FAs, and stolen CB's Confidential Information, Proprietary Information, Intellectual Property and trade secrets and utilized the same in order to unlawfully compete with CB.

74.     As a direct and proximate result of Defendants' breaches of the FAs as alleged herein, CB has incurred and continues to incur damages in an amount to be proven at trial but believed to be in excess of $75,000.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

75.    In addition, CB has, and will continue to, sustain irreparable harm as a result of Defendants' breaches of the FAs, and has no adequate remedy at law to compensate for such harm.  As a result, CB is entitled to injunctive relief prohibiting Defendants from further operating their "Ride Tribe" Studio in unlawful competition with CB and utilizing CB's Confidential Information, Proprietary Information, Intellectual Property and trade secrets.

## SECOND CAUSE OF ACTION

### (CB's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Against All Defendants)

76.    CB realleges and incorporates all prior allegations as if set forth fully herein.

77.    Implied with the contractual relationships between CB and Defendants was a covenant of good faith and fair dealing, pursuant to which each party was bound to refrain from any act that would impair the benefits which the other party had the right to expect from the agreement and the parties' relationship.

78.    Defendants breached the implied covenant of good faith and fair dealing by intentionally, with knowledge of the relevant facts or in reckless disregard of the same, among other things, opening up Ride Tribe Studios in unlawful competition with CB, while utilizing CB's Confidential Information, Proprietary Information, Intellectual Property and trade secrets.

79.    To date, CB has performed all of its covenants, conditions, promises, and obligations in accordance with the terms of the Ohio Agreement, except to the extent excused by, inter alia, Defendants' conduct.

80.    As a direct and proximate result of GIS's breach of covenant as alleged herein, CB has been damaged in an amount to be determined at trial, but believed to be in excess of $75,000.

## THIRD CAUSE OF ACTION

### (CB's Claim for Trade Secret Misappropriation

**Against All Defendants)**

81.    CB realleges and incorporates all prior allegations as if set forth fully herein.

82.    CB has invested a significant amount of time and money in developing its Confidential Information, Proprietary Information, Intellectual Property and trade secrets, including specialized knowledge concerning its existing, past and prospective customers, customer activity tracking information (including billing rates, customer identities and the names of customer contacts and confidential information pertaining to its customers), and other information integral to its business. CB's Confidential Information, Proprietary Information, Intellectual Property and trade secrets are critically important to CB's commercial success and the commercial success of its franchisees.

83.    CB's Confidential Information, Proprietary Information, Intellectual Property and trade secrets derive their economic value from not being known by the general public, including but not limited to, CB's direct competitors, such as Defendants.

84.    CB has made reasonable and diligent efforts to maintain the confidentiality of such information including incorporating confidentiality agreements in its FAs with the Defendants, who also agreed to take all steps to preserve the confidentiality of such information.

85.    Defendants misused and misappropriated CB's Confidential Information, Proprietary Information, Intellectual Property and trade secrets for their own benefit and gain and to the detriment of CB, including by, among other things, soliciting CB's customers using CB's Confidential Information, Proprietary Information, Intellectual Property and trade secrets, and utilizing CB's Intellectual Property to provide services to the customers that Defendants' stole from CB.

86.    As a result of Defendants' misconduct, CB has sustained damages in an amount to be determined at trial. Furthermore, Defendants acted with malice

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

and/or oppression, entitling CB to punitive damages sufficient to deter future wrongful conduct. Defendants knew it was wrong to misappropriate CB's Confidential Information, Proprietary Information, Intellectual Property and trade secrets and to utilize this information to solicit customers from CB, yet acted in conscious disregard of that knowledge.

87.     Defendants' misappropriation of CB's Confidential Information, Proprietary Information, Intellectual Property and trade secrets was willful and malicious, such that CB is entitled to an award of its reasonable attorney's fees and costs under California Civil Code § 3426.4.

88.     In addition, CB is entitled to injunctive relief to prevent Defendants further misappropriation of CB's Confidential Information, Proprietary Information, Intellectual Property and trade secrets, as CB has suffered, and will continue to suffer, irreparable harm as a result of losing customers, proprietary information, its competitive advantage, its trade secrets and goodwill as a direct and/or proximate result of Defendants' misappropriation of CB's Confidential Information, Proprietary Information, Intellectual Property and trade secrets.

## FOURTH CAUSE OF ACTION

### (Plaintiffs' Claims for Unfair

### Competition Against All Defendants)

89.     Plaintiffs reallege and incorporate all prior allegations as if set forth fully herein.

90.     The acts and practices of Defendants, and each of them, as alleged herein constitute unlawful, unfair and/or fraudulent business acts and practices within the meaning of California Business and Professions Code Sections 17200, *et seq*.

91.     The aforementioned acts and conduct of Defendants constitute unfair competition under California law, as Defendants have unfairly benefitted from the misappropriation of CB's Confidential Information, Proprietary Information,

1  Intellectual Property and trade secrets, and CBSPV's Marks, and did so in breach

2  of their express obligations under the FAs.

3    92.    As a direct and proximate result of the aforementioned acts of

4  Defendants, Plaintiffs have been damaged in an amount to be determined at trial.

5    93.    As a direct and proximate result of the aforementioned acts of

6  Defendants, Plaintiffs are entitled to relief, including full restitution and/or

7  disgorgement of all revenues, earnings, profits, compensation and/or benefits, and

8  such other relief that the Court deems just in light of the ill-gotten funds obtained

9  by Defendants as a result of such unfair and unlawful business acts and practices.

10    94.    In addition, Plaintiffs are entitled to injunctive relief to prevent

11  Defendants further unfair competition, as Plaintiffs have suffered, and will

12  continue to suffer, irreparable harm as a result of losing customers, technology,

13  competitive advantage, trade secrets and goodwill as a direct and/or proximate

14  result of Defendants' unfair competition

## FIFTH CAUSE OF ACTION

### (CB's Claim for Intentional Interference with Contractual Relations Against All Defendants)

18    95.    CB realleges and incorporates all prior allegations as if set forth fully

19  herein.

20    96.    Pursuant to the terms of the Franchise Agreements, CB owned the

21  customer information and upon Defendants abandonment of the CYCLEBAR®

22  Studios, all customer related information and agreements were to be returned to

23  CB, as the sole owner of the same.

24    97.    Defendants did not return all the customer information but rather

25  encouraged the customers to breach their contractual relationships with CB and the

26  CYCLEBAR® Studios and to form new contractual relationships with Defendants

27  Ride Tribe Studios.  On information and belief, at the encouragement of, and in

28  collaboration with, Defendants, numerous customers ceased performing pursuant

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  to their contractual relationships with CB and the CYCLEBAR® Studios, and

2  entered into new contractual relationships with Defendants' Ride Tribe Studios.

3      98.    As a proximate result of Defendants' encouragement of these

4  customers to end their contractual relationship with CB and the CYCLEBAR®

5  Studios, CB suffered, and will continue to suffer, general and special damages in

6  an amount to be proven at trial, and CB seeks compensation for all damages and

7  losses proximately caused by these breaches.

8      99.    Defendants' knowing and intentional conduct was a substantial factor

9  in causing CB's harm.

10  

**SIXTH CAUSE OF ACTION**

**(CB's Claim for Intentional Interference with Prospective**

**Economic Advantage Against All Defendants)**

11

12

13      100.    CB realleges and incorporates all prior allegations as if set forth fully

14  herein.

15      101.    Pursuant to the terms of the Franchise Agreements, CB owned the

16  customer information and upon Defendants abandonment of the CYCLEBAR®

17  Studios, all customer related information and agreements were to be returned to

18  CB, as the sole owner of the same. CB's economic relationships with the

19  customers of the CYCLEBAR® Studios would have resulted in an economic

20  benefit to CB.

21      102.    Defendants were aware of CB's economic relationships with the

22  customers of the CYCLEBAR® Studios and engaged in wrongful conduct

23  intended to disrupt and/or that they knew was certain or substantially certain to

24  disrupt such relationships, including failing to return all the customer information

25  as required by the Franchise Agreements, and instead encouraging the customers to

26  end their relationships with CB and the CYCLEBAR® Studios and to form new

27  relationships with Defendants Ride Tribe Studios, in breach of the Franchise

28  Agreements.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

103. On information and belief, as a result of Defendants' wrongful conduct, CB's economic relationships with numerous customers were disrupted by, among other things, customers ending their economic relationships with CB and the CYCLEBAR® Studios and forming new economic relationships with Defendants' Ride Tribe Studios.

104. As a proximate result of Defendants' wrongful conduct and interference with the customers' economic relationships with CB and the CYCLEBAR® Studios, CB suffered, and will continue to suffer, general and special damages in an amount to be proven at trial, and CB seeks compensation for all damages and losses proximately caused by these breaches.

105. Defendants' knowing and intentional conduct was a substantial factor in causing CB's harm.

## SEVENTH CAUSE OF ACTION

### (CB's Claim for Negligent Interference with Prospective Economic Advantage Against All Defendants)

106. CB realleges and incorporates all prior allegations as if set forth fully herein.

107. Pursuant to the terms of the Franchise Agreements, CB owned the customer information and upon Defendants abandonment of the CYCLEBAR® Studios, all customer related information and agreements were to be returned to CB, as the sole owner of the same. CB's economic relationships with the customers of the CYCLEBAR® Studios probably would have resulted in an economic benefit to CB.

108. Defendants knew or should have known of CB's economic relationships with the customers of the CYCLEBAR® Studios and engaged in wrongful conduct Defendants knew, or should have known, would disrupt such relationships if Defendants failed to act with reasonable care, including failing to return all the customer information as required by the Franchise Agreements, and

instead encouraging the customers to end their relationships with CB and the CYCLEBAR® Studios and to form new relationships with Defendants Ride Tribe Studios, in breach of the Franchise Agreements.

109.    On information and belief, as a result of Defendants' wrongful conduct, CB's economic relationships with numerous customers was disrupted by, among other things, customers ending their economic relationships with CB and the CYCLEBAR® Studios and forming new economic relationships with Defendants' Ride Tribe Studios.

110.    As a proximate result of Defendants' wrongful conduct and interference with the customers' economic relationships with CB and the CYCLEBAR® Studios, CB suffered, and will continue to suffer, general and special damages in an amount to be proven at trial, and CB seeks compensation for all damages and losses proximately caused by these breaches.

111.    Defendants' conduct was a substantial factor in causing CB's harm.

## EIGHTH CAUSE OF ACTION

### (CBSPV's Claim for Trademark Infringement
### Against All Defendants)

112.    CBSPV realleges and incorporates all prior allegations as if set forth fully herein.

113.    Defendants' actions in continuing to utilize, display and identify themselves with the CYCLEBAR® Marks, without the consent of CBSPV (including through the use of the CYCLEBAR® Marks on their social media, such as Instagram), constitutes infringement of the registered CYCLEBAR® Marks and has caused and continues to cause a likelihood of confusion, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

114.    By reason of the foregoing, CBSPV has been injured in an amount not yet fully determined but believed to be in excess of the jurisdictional limit of this court, in an amount to proven at the time of trial.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52ⁿᵈ Floor
Los Angeles, CA 90071

115.    In addition, as a result of Defendants' acts of trademark infringement, CBSPV has suffered and will continue to suffer irreparable harm, and CBSPV has no adequate remedy at law with respect to this injury.  Unless the acts of trademark infringement are enjoined by this Court, CBSPV will continue to suffer irreparable harm.

116.    Defendants' actions have been knowing, intentional, wanton, and willful, entitling Plaintiff to damages, treble damages, profits, attorney fees, and the costs of this action.

## NINTH CAUSE OF ACTION

### (CBSPV's Claim for Common Law Trademark
### Infringement Against All Defendants)

117.    CBSPV realleges and incorporates all prior allegations as if set forth fully herein.

118.    Defendants' actions in continuing to utilize and display the CYCLEBAR® Marks in connection with their marketing and operation of the Ride Tribe Studios, without the consent of CBSPV, constitutes infringement of the CYCLEBAR™ Marks under common law, and has caused and continues to cause a likelihood of confusion, mistake, and deception as to source, sponsorship, affiliation or connection in the mind of the public.

119.    By reason of the foregoing, CBSPV has been injured in an amount not yet fully determined but believed to be in excess of the jurisdictional limit of this court, in an amount to proven at the time of trial.

120.    In addition, as a result of Defendants' acts of trademark infringement, CBSPV has suffered and will continue to suffer irreparable harm, and CBSPV has no adequate remedy at law with respect to this injury.  Unless the acts of trademark infringement are enjoined by this Court, CBSPV will continue to suffer irreparable harm.

121.    Defendants' actions have been knowing, intentional, wanton, and

1  willful, entitling CBSPV to damages, treble damages, profits, attorney fees, and the

2  costs of this action.

3  **TENTH CAUSE OF ACTION**

4  **(CBSPV's Claim for Federal Unfair Competition,**

5  **15 U.S.C. § 1125 Against All Defendants)**

6      122.   CBSPV realleges and incorporates all prior allegations as if set forth

7  fully herein.

8      123.   Defendants' actions in continuing to utilize and display the

9  CYCLEBAR® Marks in connection with their marketing and operation of the Ride

10  Tribe Studios, without the consent of CBSPV, constitutes infringement of the

11  registered CYCLEBAR® Marks, and has caused and continues to cause a

12  likelihood of confusion and falsely identifies and represents Defendants with

13  CBSPV and constitutes unfair competition in violation of the Lanham Act.

14      124.   By reason of the foregoing, CBSPV has been injured in an amount not

15  yet fully determined but believed to be in excess of the jurisdictional limit of this

16  court, in an amount to proven at the time of trial.

17      125.   In addition, as a result of Defendants' acts of trademark infringement,

18  CBSPV has suffered and will continue to suffer irreparable harm, and CBSPV has

19  no adequate remedy at law with respect to this injury.  Unless the acts of trademark

20  infringement are enjoined by this Court, CBSPV will continue to suffer irreparable

21  harm.

22      126.   Defendants' actions have been knowing, intentional, wanton, and

23  willful, entitling CBSPV to damages, treble damages, profits, attorney fees, and the

24  costs of this action.

25      **WHEREFORE**, CB and CBSPV demand judgment against Defendants as

26  follows:

27      1.  For damages in an amount according to proof at trial but believed to be in

28  excess of $75,000;

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

2.  For an Order from the Court requiring Defendants to perform their obligations under the FAs;

3.  For a preliminary and/or permanent injunction against Defendants prohibiting them from unfairly competing with CB utilizing the "Ride Tribe" Studios and/or CB's confidential, proprietary, trademark and/or trade secret information;

4.  For an accounting of profits and damages resulting from Defendants' wrongful acts, and trebling and/or enhancement of such damages under the trademark laws as an exceptional case because of the knowing, intentional, willful, and wanton nature of Defendants' conduct;

5.  For disgorgement of all Defendants' profits and restitution;

6.  For treble damages;

7.  For an Order providing that CB is to assume management of the CYCLEBAR® Studios abandoned by Defendants and charge a management fee equal to 3% of each of the CYCLEBAR® Studio's gross revenue;

8.  For costs of suit, including all reasonable attorneys' fees as permitted by statute and/or contract, incurred herein;

9.  For any prejudgment or other interest according to law;

10.  For such other and further relief that the Court deems just and proper.

Dated: April 1, 2025    GORDON REES SCULLY MANSUKHANI, LLP

By:  */s/ Aaron P. Rudin*
Calvin E. Davis
Aaron P. Rudin
Attorneys for Plaintiff CYCLEBAR FRANCHISING, LLC and CYCLEBAR FRANCHISING SPV, LLC